## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MILLS LAW GROUP LLP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 22-3323-RCL** |
| | ) | |
| **REPUBLIC OF IRAQ, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MILLS LAW GROUP
## MOTION FOR ENTRY OF DEFAULT JUDGMENT [ECF No. 12-1]

---

Timothy B. Mills
D.C. Bar No. 425209
MILLS LAW GROUP LLP
800 Connecticut Avenue N.W., Suite 300
Washington, DC  20006
Telephone: (202) 457-8090
Fax: (202) 478-5081
timothy.mills@mills-lawgrp.com
*Lead Counsel for Plaintiff Mills Law Group LLP*

Dated:  October 30, 2023

**TABLE OF CONTENTS**

I.      **INTRODUCTION**.................................................................................1

II.     **PROCEDURAL HISTORY**.................................................................1

III.    **STANDARD OF REVIEW**..................................................................2

IV.     **ANALYSIS**.........................................................................................3

        A.      Plaintiff MLG Has Established Jurisdiction and Proven All MLG Claims
                Against Defendants and Rights to Relief by Evidence that is Satisfactory
                to the Court ................................................................................3

        B.      Proof of FSIA Subject Matter and Personal Jurisdiction, Plaintiff's
                Claims (Counts I through IV) and Right to Additional Relief
                (Accrued Pre-Judgment Interest, Collection Costs, and Taxable Costs) ...............5

                1.      FSIA Subject Matter and Personal Jurisdiction ...........................5

                        a.      Law ......................................................................5

                                (i)     Subject Matter Jurisdiction ..................................5

                                (ii)    Personal Jurisdiction .........................................6

                        b.      Proof of FSIA Subject Matter and Personal Jurisdiction.................7

                                (i)     FSIA Subject Matter Jurisdiction.........................7

                                        (A)     Iraq Carried on Commercial Activities in
                                                the United States .......................................7

                                        (B)     Acts of Iraq Outside the Territory of the
                                                United States In Connection with a Commercial
                                                Activity of the State of Iraq in the United States;
                                                the Direct Effect in the United States of
                                                Such Acts of Iraq ....................................11

                                (ii)    FSIA Personal Jurisdiction ...............................13

        C.      On Account Stated (Count I) ................................................14

1.  Law ................................................................................................14

    a.  Choice of Law.........................................................................14

    b.  Substantive Law......................................................................15

2.  Proof of Plaintiff MLG's On Account Stated Claims (Complaint Count I) ...........................................................................................17

D.  Breach of Engagement Agreement (Count Two) ..................................25

    1.  Law ................................................................................................25

        a.  Choice of Law.........................................................................25

        b.  Substantive Law......................................................................25

    2.  Proof of Plaintiff MLG's Breach of Contract Claim (Complaint Count Two)..................................................................25

E.  Breach of Implied Covenant of Good Faith and Fair Dealing (Complaint Count Three) ..........................................................................29

    1.  Law ................................................................................................29

        a.  Choice of Law.........................................................................29

        b.  Substantive Law......................................................................29

    2.  Proof of Plaintiff MLG's Breach of Implied Covenant of Good Faith and Fair Dealing Claims ................................................29

F.  *Quantum Meriut* (Complaint Count Four)...........................................32

    1.  Law ................................................................................................32

        a.  Choice of Law.........................................................................32

        b.  Substantive Law......................................................................33

    2.  Proof of *Quantum Meruit* Claim................................................34

G.   Prejudgment Interest on Iraq's Debt to MLG (Complaint ¶¶ 3, 26, Prayer for Relief ¶ D) ................................................................................................36

    1.   Law ...........................................................................................................36

        a.   Choice of Law ...............................................................................37

        b.   Substantive Law ............................................................................37

            (i)   Absence of Immunity from Award of Prejudgment Interest ..............................................................................37

            (ii)   Code of District of Columbia § 28–3302(a) ......................37

            (iii)   The Court's Discretion; Relevant Considerations ............37

    2.   Proof of Prejudgment Interest ..................................................................38

H.   MLG Collection Costs ........................................................................................39

    1.   Law ...........................................................................................................39

        a.   Choice of Law ...............................................................................39

        b.   Substantive Law ............................................................................40

    2.   Proof of Collection Costs Claim ..............................................................41

I.   Taxable Costs (Complaint Prayer for Relief ¶ E) ..............................................43

    1.   Law ...........................................................................................................44

    2.   Proof of Taxable Costs .............................................................................44

V.   CONCLUSION .........................................................................................................45

## I.   <u>INTRODUCTION</u>

For the reasons given in the Summary of Grounds for Entry of Default Judgment,[1] the Court should: (1) exercise jurisdiction over Defendants Republic of Iraq ("Iraq") and Ministry of Justice of the Republic of Iraq ("Ministry" or "MoJ") pursuant to the commercial activity exception of the Foreign Sovereign Immunities Act;[2] and (2) grant the Motion; and (3) enter default judgment in favor of Plaintiff MLG and against Defendants Iraq and MoJ for damages, accrued pre-judgment interest and MLG collection costs as stated and evidenced by the Motion Papers, totaling $5,528,944.33 as of 5 p.m., Saturday, 28 October 2023, plus such: (i) subsequently incurred prejudgment interest; (ii) subsequently incurred MLG collection costs; and (iii) post-judgment interest on the judgment debt pursuant to 28 U.S.C. § 1961.

## II.   <u>PROCEDURAL HISTORY</u>

MLG commenced this action on 30 October 2022 [ECF No. 1], and effected service on Defendants on November 23, 2022. *See* Proof of Service by Foreign Mailing, [ECF No. 9].

Defendants Iraq and MoJ failed to appear.

Accordingly, on January 24, 2023, the Clerk of the Court entered default against defendant. *See* Clerk's Entry of Default [ECF No. 11].

On November 15, 2022, Plaintiff MLG initiated service pursuant to the applicable service provision of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a)(3). [ECF Nos. 6-8].

---

[11] *See*, Motion for Entry of Default Judgment ("Motion") at 2-9 [ECF No. 12 at pp. 2-9].
[2] 28 U.S.C. § 1605(a)(2).

1

On November 23, 2022, the Service Documents[3] were served by way of delivery to and receipt of the Service Documents by "R. Sadoun, front desk receptionist" (the "Service Date"). *See* Proof of Service by Foreign Mailing), Annex 2 (Federal Express tracking documentation) at p2 [ECF No. 9].

Plaintiff MLG thus complied with the FSIA service requirements. 28 U.S.C. § 1608(c).

Having been served on November 23, 2022, Defendants Iraq and MoJ were required to file a responsive pleading on or before January 22, 2023 – that is, within sixty (60) days after the Service Date. 28 U.S.C. § 1608(d).

Defendants Iraq and MoJ neither filed a responsive pleading by January 22, 2023 (or thereafter) nor appeared in this action.

On January 24, 2023, the Clerk entered the default of Defendants Iraq and MoJ. [ECF No. 11].

## III.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."

Additionally, under the FSIA, default judgment may not be entered against foreign sovereign Defendants Iraq and MoJ "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).

---

[3] The Service Documents consist of: (1) Summons [ECF #3], Notice of Consent [ECF #3-1] and Corrected Complaint [ECF #5-2]; (2) Related Case Notice [ECF #2] (filed simultaneously with Complaint); (3) Errata Notice re Annex B to Complaint [ECF #5]; and (4) Notice of Suit (pursuant to 28 U.S.C. §1608(a) and 22 C.F.R. § 93.2) [ECF #; and (6) Arabic-language translation of each of the foregoing. *See* Amended Affidavit Requesting Foreign Mailing [ECF #6].

This requirement "imposes a duty on FSIA courts to not simply accept a complaint's unsupported allegations as true, and obligates courts to inquire further before entering judgment against parties in default. *Rimkus v. Islamic Republic of Iran,* 750 F.Supp.2d 163, 171 (D.D.C. 2010).

The FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide to meet the "satisfactory to the court" standard of proof. *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014).

Nevertheless, as this Court stated in *Oveissi v. Republic of Iran*, 879 F.Supp.2d 44, 49 (D.D.C. 2012):

> In considering whether to enter default judgment, courts in FSIA cases look to various sources of evidence to satisfy their statutory obligation. Courts may, for example, rely upon plaintiff's "uncontroverted factual allegations, which are supported by ... documentary and affidavit evidence." *Valore v. Islamic Republic of Iran,* 700 F. Supp.2d 52, 59 (D.D.C.2010) (alteration in original; quoting *Int'l Road Fed'n v. Democratic Republic of the Congo,* 131 F.Supp.2d 248, 252 n. 4 (D.D.C.2001)). In addition to more traditional forms of evidence—testimony and documentation—plaintiffs in FSIA cases may also submit evidence in the form of affidavits. *Blais v. Islamic Republic of Iran,* 459 F.Supp.2d 40, 53 (D.D.C.2006) (citing *Bodoff v. Islamic Republic of Iran,* 424 F.Supp.2d 74, 82 (D.D.C.2006)).

## IV.   ANALYSIS

### A.   Plaintiff MLG Has Established Jurisdiction and Proven All MLG Claims Against Defendants and Rights to Relief by Evidence that is Satisfactory to the Court

Plaintiff MLG meets its burden of establishing by proving by the more than satisfactory presented evidence – consisting of documents, sworn affidavits and references to the record in this action which are: (1) stated and referenced in the accompanying Statement of Undisputed Facts [ECF No. 12-6]; and (2) more than sufficient for the Court to: (a) find that no genuine dispute as to any material fact does or can exist; and (b) that Plaintiff MLG is entitled to

judgment as a matter of law on each of Plaintiff MLG's claims and rights to relief (were this a Fed. R. Civ. P. 56 motion for summary judgment).[4]

1.      That this Court possesses jurisdiction over both Defendants Iraq and MoJ under the FSIA commercial activity exception to foreign sovereign immunity, 28 U.S.C. Section 1605(a)(2);

2.      Proof of each of Plaintiff MLG's claims against Defendants, alleged and stated in Complaint Counts I through IV, as elaborated upon by the Motion Papers;[5] and

3.      Plaintiff MLG's right to the following additional relief, alleged and stated in the Complaint:

A.      Accrued pre-judgment interest pursuant to D.C. Code § 28-3302(a), as alleged and stated in Complaint ¶ 26 and Complaint Prayer for Relief ¶ D;

B.      Plaintiff MLG's Collection Costs, as alleged and stated in Complaint ¶ 9.A-F and Complaint Prayer for Relief ¶ C(4); and

C.      The taxable costs of bringing this action pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d), as alleged and stated in Complaint Prayer for Relief ¶ E.[6]

---

[4] Plaintiff recognizes the difference between the greater burden of proof for entry of summary judgment pursuant to Fed. R. Civ. P. 56 (presentment of evidence that shows there is no dispute of material fact) and the lesser evidentiary burden for entry of default judgment against a foreign sovereign under 28 U.S.C. § 1608(e) ("evidence satisfactory to the Court"). Although not required to do so, Plaintiff has elected to present evidence that the greater burden in the interest of demonstrating to the Court the legally indisputable merit of Plaintiff's claims and rights to relief.

[5] *See e.g.,* Annex A, Ex. 1 to Mem. of Law [ECF No. 12-2] (Plaintiff's definitive controlling statement of: (1) the entirety of Wye Oak Litigation Invoices that MLG presented to and have not been paid by Iraq-MoJ; (2) application of the $100,000 MoJ retainer funds to the first Wye Oak Legal Fees Invoice (MLG Invoice No. 19-1220-001).

[6] *See* this Mem. of Law at 4-5, *infra* (summary of damages and relief, citations to supporting evidence.

**B.** **Proof of FSIA Subject Matter and Personal Jurisdiction, Plaintiff's Claims (Counts I through IV) and Right to Additional Relief (Accrued Pre-Judgment Interest, Collection Costs, and Taxable Costs)**

    **1.** **FSIA SUBJECT MATTER AND PERSONAL JURISDICTION**

        **a.** **Law**

        (i)    Subject Matter Jurisdiction

The FSIA provides the only means of suing a foreign sovereign in U.S. courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). A foreign state is presumptively immune from federal and state courts' jurisdiction, subject to several codified exceptions. 28 U.S.C. §§ 1604–1607.

As previously noted, Jurisdiction in this case is predicated upon the FSIA's commercial activity exception to sovereign immunity. Under the FSIA:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

*Id.* § 1605(a)(2). MLG only needs to establish its claims falls within one of the three prongs of exceptions provided in § 1605(a)(2) because the exceptions are disjunctive and only one needs to apply to bestow jurisdiction.

The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." *Id*. § 1603(d).

A foreign sovereign defendant's contracting for the provision of legal services in the United States constitutes 'commercial activity' of the foreign sovereign defendant carried on in the United States sufficient to bestow the Court with FSIA subject matter jurisdiction under the

first prong of the § 1605(a)(2) exceptions. *Lanny J. Davis & Assocs. LLC v. Republic of Equitorial Guinea*, 962 F.Supp. 2d 152, 159 (D.D.C.) That is because "retaining an attorney is the type of activity by which private parties engage in commerce." *Nnaka v. Federal Republic of Nigeria,* 238 F.Supp. 3d 17, 28 (D.D.C. 2017). It does not matter why the foreign government retained counsel or whether the foreign government's ultimate objective in retaining counsel was to further a sovereign interest, just as it does not matter why a foreign government might contract to purchase army boots or bullets. *Id.* What matters is whether the suit is based upon "the *type* of action[ ] by which a private party engages in 'trade and traffic or commerce.'" *Weltover,* 504 U.S. at 614 (quoting Black's Law Dictionary 270 (6th ed. 1990)).

A foreign sovereign defendant's failure to make a contractually required deposit in a bank in the United States meets the definition of an act of the foreign sovereign defendant that causes a "direct effect in the United States" sufficient to bestow the Court with FSIA subject matter jurisdiction under the third prong of the § 1605(a)(2) exceptions – without regard to whether the parties considered the place of payment "important," "critical," or "integral." *I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1186 (D.C.Cir.2003); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) ("Because New York was ... the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States: Money that was supposed to have been delivered to a New York bank for deposit was not forthcoming.").

(ii)    Personal Jurisdiction

Once subject matter jurisdiction exists under the FSIA, personal jurisdiction over a foreign sovereign defendant is also established, provided that the foreign sovereign defendant

was properly served. 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist

as to every claim for relief over which the district courts have jurisdiction … where service has

been made under section 1608 of this title."); *see also Practical Concepts, Inc. v. Republic of*

*Bolivia*, 811 F.2d 1543, 1548 n. 11 (D.C.Cir.1987) ("[U]nder the FSIA, subject matter

jurisdiction plus service of process equals personal jurisdiction").

>        **b.**     **Proof of FSIA Subject Matter and Personal Jurisdiction**[7]

For proof of jurisdictional facts, Plaintiff MLG refers the Court to: (1) the facts alleged in

Complaint ¶¶ 7 and 9 through 26; (2) the facts stated the Statement of Undisputed Facts ¶¶ J-1

through J-15; and (3) the evidence presented in support of the Motion, as referenced at Statement

of Undisputed Facts ¶¶ J-1 through J-15.

>        (i)      <u>FSIA Subject Matter Jurisdiction</u>

>        (A)      <u>Iraq Carried on Commercial Activities in the United States</u>

In sum, Defendants Iraq and MoJ carried on the following commercial activities in the

United States upon which this action is based:

J-1.     MLG and Defendants Iraq and MoJ entered into the commercial Engagement

Agreement (dated 15 March 2018, effective as of 19 February 2018) for MLG and Associated

Co-Counsel, in Washington, D.C., to provide Legal Services in defense of Defendants in the

Wye Oak Litigation before this Court and the U.S. Court of Appeals for the District of Columbia

---

[7] For ease of comprehension and referenced, the numbered paragraphs of this Mem. of Law relating to proof of facts are numbered to reflect the subject matter to which the paragraphs pertain. For example, ¶¶ J-1, J-2, *etc.*, pertain to jurisdiction; ¶¶ I-1, I-2, *etc.* pertain to Count I (On Account Stated); ¶¶ II-1, II-2 *etc.* pertain to Count II (Breach of Engagement Agreement), and so forth.

Circuit ("D.C. Circuit") during the Term of Representation. Compl. ¶¶ 2.A, 5.C, 9, 10 and 16;

Statement of Undisputed Facts ¶¶ J-2, J-3 through J-6, and presented evidence cited therein.

J-2.    The Engagement Agreement required Iraq to make payment in the United States

into the bank account of MLG of: (i) a retainer of $100,000, and to make additional payments to

maintain the retainer in the amount of $100,000 throughout the representation (Engagement

Agreement at 2); (ii) advances of funds required for MLG to pay Wye Oak Litigation expenses

incurred on Iraq's behalf out of Iraq-advanced funds (Engagement Agreement at 4 ,

"Incorporation of Standard Terms"; Compl. Ex. 1.2 (Maggs & McDermott LLC-Republic of Iraq

Ministry of Justice Wye Oak Litigation Engagement Agreement) at 8, "Costs and Expenses,

second para. [ECF No. 5-2 at 180], (iii) payment (reimbursement) of the Wye Oak Litigation

Expenses invoiced by MLG to Iraq by MLG's Presentment to Iraq of Wye Oak Incurred

Litigation Cost Invoices and payment of Wye Oak Litigation legal fees invoiced by MLG to Iraq

by MLG's Presentment to Iraq of Wye Oak Legal Fees Invoices by the Payment Due Date for

each such invoice (that is, not later than 60 days after the Presentment Date) (Engagement Letter

at 3 ("Invoicing and Payments"); and (iv) payment of Wye Legal Fees Invoices by not later than

the Payment Due Date (*id.*). Statement of Undisputed Facts at ¶ J-6, and presented evidence cited

therein.

J-3.    The Engagement Agreement also provided that: (i) each Wye Oak Litigation

Invoicethat Iraq did not pay in full by the Payment Due Date became delinquent on the 61st

calendar day following the Presentment Date (Engagement Agreement at 4); and (ii) if

Defendants' account becomes delinquent, and the delinquency continues and neither Defendant

arranges satisfactory payment terms, then collection activities by MLG will be necessary, and

Defendants shall pay MLG "any costs we [MLG] may incur in collecting the debt, including

court costs, filing fees and a reasonable attorney's fee. Compl. ¶¶ 9.F and 19; Engagement

Agreement at 4; Maggs & McDermott-MoJ Engagement Letter at 8-9; Statement of Undisputed

Facts at ¶¶ J-6 and VI-5 and evidence cited therein.

       J-4.     Pursuant to the Engagement Agreement, Iraq made only the following payments

to MLG through checks drawn on a United States bank in the District of Columbia, on an

account maintained by the Embassy of Iraq in Washington, D.C. that the authorized

representative of Iraq in the United States hand-delivered to Mills Law Group in Washington,

D.C. for deposit by Mills Law Group into the bank account of Mills Law Group in Washington,

D.C., and which MLG then deposited into a MLG attorney trust account at Citibank N.A. in

Washington, D.C: (i) Embassy Check No. 16767 dated 30 August 2018 in the amount of

$150,000 as payment in arrears of incurred of Expenses (credited against MLG Wye Oak

Litigation Expense Invoice # 19-1009-01C, leaving a balance due and unpaid of $3,373.35 on

that MLG Invoice # 19-1009-01C); (ii) Iraqi Embassy Check No. 16933 dated 14 November

2018 in the amount of $100,000 representing a late payment of the Retainer due under the

Engagement Agreement (credited against MLG Wye Oak Litigation Fees Invoice # 2019-1220-

001, leaving a balance due and unpaid of $52,245 on Invoice # 2019-1220-001;[8] and (iii) Iraqi

Embassy Check No. 17080 dated 27 December 2018 in the amount of $27,596.48 (remitting

funds to pay Wye Oak counsel a Court-ordered discovery sanction in the amount of $27,596.48,

*see* [Wye Oak Litigation ECF Nos. 350 and 451] (the "Sanctions Orders"), which MLG remitted

to Wye Oak counsel in satisfaction of the Sanctions Orders. *See* Compl. ¶ 11; Statement of

Undisputed Facts at ¶ J-7 and presented evidenced cited therein.

---

[8] *See* Annex A (Mem. of Law Ex. 1) at Row ¶ 18.T and presented evidenced cited therein.

J-5.    Between December 2019 and December 2021, MLG presented to Iraq Wye Oak Incurred Litigation Cost Invoices for Expenses in the total amount of $287,393.65 and Wye Oak Legal Fees Invoices for Legal Services in the total amount of $3,787,777.00, in sum totaling $4,075,170.65. Compl. ¶ 18, as respectively elaborated and supplemented by Annex A (Ex. 1 to Mem. of Law) at ¶¶ 18.AP and 18.AQ [ECF No. 12-2 at p.81]; Statement of Undisputed Facts at ¶ J-9(A) and presented evidence cited therein.

J-6.    With respect to all Legal Services stated in the Complaint (inclusive of Complaint ¶ 18 and Complaint Annex A, as elaborated and supplemented by Annex A (Mem. of Law Ex. 1) [ECF No. 12-2]): (1) MLG and Associated Counsel provided Wye Oak Legal Services pursuant to the Engagement Agreement at the request of Iraq, and primarily in the United States (as alleged and stated in Complaint ¶¶ 18.A, 18.B, and 18.C); and (2) MLG performed its contractual obligations in full and in a manner conforming to the requirements of the Engagement Agreement (as alleged and stated in Complaint ¶ 41). *See* Compl. ¶¶ 18 and 41; Complaint Annex A as elaborated and supplemented by Annex A (Ex. 1 to Mem of Law) [ECF No. 12-2] (inclusive of presented evidence cited therein); Statement of Undisputed Facts at ¶ J-10 and presented evidence cited therein.

J-7.    Iraq materially breached the Engagement Agreement, by:

A.    Not maintaining the retainer sum in the amount of $100,000 in MLG's bank account in the United States, thereby causing damage in the United States to MLG and Associated Counsel;

B.    Not advancing funds to Mills Law Group by not depositing such funds to MLG's bank account in the United States, as required for Mills Law Group, to pay Wye Oak Litigation expenses out of Iraq-advanced funds, thereby causing damage in the United States to

10

MLG, Associated Counsel and the translation firm Beyond Words; and (3) not paying any of the Wye Oak invoices for Legal Services fees and reimbursement of incurred expenses that are the subject of Complaint, as alleged in Complaint ¶ 11.B.

    C.  As stated in Complaint ¶ 18, Complaint Annex A as supplemented by Annex A (Ex. 1 to Mem. of Law) [ECF # 12-2], not remitting to MLG's bank account in the United States any payment of any Wye Oak Litigation Invoice, thereby causing damage in the United States to MLG and Associated Counsel and translation firm Beyond Words. *See* Compl. ¶ 18, Complaint Annex A as supplemented by Annex A (Ex. 1 to Mem. of Law) [ECF No. 12-2]; Statement of Undisputed Facts at ¶¶ J-8, J-9 and J-14 and presented evidenced cited therein.

    (B)  <u>Acts of Iraq Outside the Territory of the United States In Connection with a Commercial Activity of the State of Iraq in the United States; the Direct Effect in the United States of Such Acts of Iraq</u>

J-8.  Defendants Iraq and MoJ acted in Iraq, and failed to act in Iraq, in connection with the commercial payment obligations to MLG (whether on account stated, pursuant to the Engagement Agreement or in *quantum meruit*) arising out of the commercial activity of MLG's Wye Oak Litigation representation of Iraq as directed by Iraq (as summarized immediately below). Such acts of Defendants have caused the following direct effects in the United States.

  <u>Direct Effects</u>

J-9.  Pursuant to the Engagement Agreement, Iraq must pay each MLG Wye Oak Litigation Invoices by wire transfer in U.S. dollars to MLG's bank account in the United States in accordance with the banking instructions stated on each such invoice. Iraq's breach of its legal obligation to remit payment by wire to MLG's bank account in the United States constitutes a "direct effect" in the United States of Iraq's commercial activity.

A.      Pursuant to the Engagement Agreement, MLG presented each Wye Oak Litigation Invoices by email to the MoJ Legal Department for approval and payment by MoJ by not later than the Payment Date (that is, within sixty (60) days of the Presentment Date) for each such Wye Oak Litigation Invoice. Statement of Material Facts at ¶¶ J-9 and J-11.A. and presented evidence cited therein.

B.      The MoJ officials responsible for processing and approval of the Wye Oak Litigation Invoices include: (i) the Director General of the MoJ Legal Department ("DG"); and (ii) the Minister of Justice of the Republic of Iraq ("Minister of Justice"). The DG and the Minister of Justice each are located in the Ministry of Justice headquarters building in Baghdad, Iraq. Statement of Material Facts at ¶ J-11.B and presented evidence cited therein.

J-10.   The actions and inactions of the DG and the Minister of Justice that have resulted in Iraq materially breaching its commercial contractual obligations owed to Mills Law Group under the Engagement Agreement – that is: (1) to maintain the $100,000 retainer; (2) to advance funds to MLG to pay Wye Oak Litigation Incurred Costs; and (3) to pay the Wye Oak Litigation Invoices by not later than the Payment Due Date – took place at the Ministry of Justice HQ in Baghdad Iraq. Statement of Undisputed Facts at ¶ J-13 and presented evidence cited therein. *See also* Statement of Undisputed Facts at ¶¶ J-9 and J-12 and presented evidence cited therein.

J-11.   Iraq's breach of the commercial payment obligations of the Engagement Agreement caused additional direct effects in the United States, including, but not limited to:

A.      MLG consequently not having the MoJ contractually-promised funds to pay:

(1)     Wye Oak Litigation Expenses consisting of translation fees billed to MLG by the professional services translation firm Beyond Words LLC (located in Washington, D.C.)

("Beyond Words") that provided the English-Arabic and Arabic-English translation services on behalf of Iraq in the Wye Oak Litigation (including for the depositions of the Iraqi witnesses and translation of Arabic-language documents produced by Iraq), which MLG invoiced to Iraq pursuant to the Engagement Agreement, and, which, pursuant to the Engagement Agreement, Iraq is obligated to pay to MLG by the Payment Due Date for the pertinent Wye Oak Incurred Litigation Cost Invoices by which MLG billed Iraq for such translation fees (as alleged and stated in Complaint ¶ 15.A(i));

(2)     Wye Oak Litigation legal fees and expenses of Associated Co-Counsel (DiMuro Ginsberg P.C.) which MLG invoiced to Iraq pursuant to the Engagement Agreement, and, which, pursuant to the Engagement Agreement, Iraq is obligated to pay to MLG by the Payment Due Date for the pertinent Wye Oak Legal Fees Invoices by which MLG billed Iraq for such legal fees and expenses of Associated Co-Counsel (as alleged and stated in Complaint ¶ 15.A(ii)). Statement of Undisputed Facts at ¶ J-14 and presented evidence cited therein; and

B.     Depriving MLG, Associated Counsel DiMuro Ginsberg and Beyond Words, respectively, of use of money in the total amounts owed by Iraq for: (1) Wye Oak Legal Fees Invoices (as to MLG and Associated Counsel DiMuro Ginsberg); (2) Wye Oak Incurred Litigation Cost Invoices (unreimbursed Wye Oak Litigation Expenses incurred by MLG and Associated Counsel DiMuro Ginsberg, inclusive of unreimbursed translation fees of Beyond Words) (as alleged in Complaint ¶ 15.B). Statement of Undisputed Facts at ¶ J-14 and presented evidence cited therein.

Conclusion: Given the foregoing: (1) the FSIA § 1605(a)(2) commercial activity exception to foreign sovereign immunity applies; and (2) the Court possesses FSIA subject matter jurisdiction over this action.

13

(ii)     FSIA Personal Jurisdiction

J-12.    Plaintiff MLG has effected FSIA-compliant service pursuant to 28 U.S.C. §
1608(a)(3) by:

(1)     Having initiated such service on Defendants Iraq and MoJ on November
15, 2022. Certif. Mailing [ECF No. 8]; and

(2)     Serving Defendants Iraq and MoJ in accordance with 28 U.S.C. §
1608(a)(3) on November 23, 2022. Proof of Service by Foreign Mailing [ECF No. 9].

Conclusion: Given the foregoing, the Court possesses FSIA personal jurisdiction over
Defendants in this matter. 28 U.S.C. § 1330(b); *Practical Concepts, Inc. v. Republic of Bolivia*,
811 F.2d 1543, 1548 n. 11 (D.C.Cir.1987).

**C.     ON ACCOUNT STATED (COUNT I)**

**1.     Law**

a.      Choice of Law

In the D.C. Circuit, "courts considering issues governed by state substantive law in FSIA
cases should apply the choice-of-law rules of the forum state." *Oveissi v. Islamic Republic of
Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009).

The forum state for this action is the District of Columbia (U.S. District Court for the
District of Columbia is seated in the District of Columbia).

Accordingly, to determine the law that governs and controls the Engagement Agreement
in this breach of contract dispute, District of Columbia courts apply "a constructive blending" of
a "governmental interest analysis" with a "most significant relationship" test. *Hercules & Co. v.
Shama Rest. Corp.,* 566 A.2d 31, 41n. 18 (D.C.1989). In applying this blended analysis to breach
of contract disputes in which the contract lacks an effective choice-of-law provision, D.C. courts

apply the five factors outlined in the Restatement: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance of the contract, (4) the location of the subject matter of the contract[,] and (5) the place of incorporation and the place of business of the parties." *Kroger v. Legalbill.com,* 436 F.Supp.2d 97, 104 (D.D.C.2006) (collecting cases); *see* also Restatement (Second) of Conflict of Laws § 188(2) (1971). *See Lanny J. Davis & Assocs. LLC*, 962 F.Supp.2d 152, 162 (D.D.C. 2013).

Here, each factor favors application of the D.C. law of on account stated: (1) the Engagement Agreement under which the MLG account invoices were rendered was signed by MLG in Washington D.C. and by MoJ in Baghdad, Iraq; (2) MLG's negotiation of the contract took place from MLG's offices in Washington D.C., via exchange of emails with the MoJ Legal Department Director General in Baghdad, Iraq; (3) MLG's performance of the invoiced Legal Services and MLG's incurrence of the invoiced Expenses – that is, the essential basis for MLG's on account stated claims -- took place primarily in Washington D.C.; (4) the District of Columbia is the location of the subject matter of MLG's on account stated claims; and (5) MLG's place of creation (as a limited liability partnership) and place of business is Washington, D.C., whereas the Ministry of Justice exists as a Ministry of the Republic of Iraq in Baghdad, Iraq by virtue of its Iraqi enabling statute, and its place of business is Baghdad, Iraq.

Given these facts, D.C. choice-of-law rules dictate that MLG's on account stated claims arise under and are governed and controlled by District of Columbia law.

b.   <u>Substantive Law</u>

The law of "on account stated" is decided law in the District of Columbia, having been clearly and unequivocally affirmed 140 years ago by the Supreme Court, *Standard Oil Co. v. Van Etten*, 107 U.S. 325 (1882)), and again 107 years ago by the D.C. Circuit, *Riley v. Mattingly*,

42 U.S. App. D.C. 290, 294 (D.C. Cir. 1914), and again by the D.C. Circuit, *Reed Research, Inc. v. Schumer Co.*, 243 F.2d 602, 604 (D.C. Cir. 1957).[9]

In *Reed Research*, the D.C. Circuit stated again and applied the law of on account stated in a manner that is most instructive, and controlling, in this case. *See Reed Research*, 243 F.2d 602-605.

> Long ago the Supreme Court held that the lapse of time which converts an account rendered into an account stated, *i.e.,* what is a reasonable time, is a question of law for the court. In that particular case a silence between three and four months was found unreasonable. *Standard Oil Co. v. Van Etten*, 1882, 107 U.S. 325, 1 S.Ct. 178, 27 L.Ed. 319.
>
> \*       \*       \*
>
> *Taking into account the long course of dealing, the complete absence of challenge to the account as stated in numerous statements, . . . the failure specifically to challenge the final statement of May 1954 for $4600.87 for two months when it appeared that the creditor was insisting on payment, we think the district court was warranted in concluding, as it did, (1) that an account stated existed and (2) the issues raised by the answer were not genuine issues. . . . [I]t failed to challenge, within a reasonable time under the circumstances shown, the final May 31 statement for $4600.87.*

*Reed Research,* 243 F.2d 602-605 (emphasis added).

The law has not differed at all since.

Accordingly, in the District of Columbia, the law of "on account stated" is crystal clear:

1.   An account rendered, and not objected to within a reasonable time, is to be regarded as admitted by the party charged to be prima facie correct, and may not be impeached save for fraud, error, or mistake; *Standard Oil Co.*, 107 U.S. 333-334; *Riley v. Mattingly*, 42 U.S. App. D.C. 294-295; *Reed Research,* 243 F.2d 602-605;

---

[9] MLG provided Iraq-MoJ with a substantially complete statement of the D.C. law of on account stated as part of MLG's 1 October 2023 Demand. *See* 2nd Certificate, Ex. ABS-13 (Annex 1 to MLG email demand to Minister of Justice and MoJ Legal Department: Statement of the Law of On Account Stated Under the Law of the District of Columbia) [ECF No. 13-2 at pp. 1473-1476]. For the sake of brevity and conciseness, Plaintiff incorporates its Statement of the Law of On Account Stated Under the Law of the District of Columbia as though fully set out herein.

2.  When (as in this case) the facts are clear, it is a question of law as to what is to be regarded as a reasonable time. *Id.*;

3.  A lapse of time without being objected to is unreasonable as a matter of law when the lapse is either: (a) as little as two months after the first of the final statements of account were sent (*see e.g., Reed Research*, 243 F.2d 604), or (b) four months (*see e.g., Standard Oil,* 107 U.S. 334), and (c) certainly eight months or longer (*see e.g.*, *Riley,* 42 U.S. App. D.C. 295);

4.  As a matter of law, any such delay by the party receiving invoices in objecting to the presented invoices converts the account rendered represented by the invoices to an account stated. *Standard Oil Co.*, 107 U.S. 333-334; *Riley v. Mattingly*, 42 U.S. App. D.C. 294-295; *Reed Research,* 243 F.2d 602-605;

5.  As a matter of the law of on account stated, a defendant party asserting communicating: (a) merely the substantial equivalent of an invoice being "too high"; or (b) that a defendant party communicating to plaintiff party (either prior to or during litigation) that defendant party "has no financial obligation" to the plaintiff does *not* challenge the figures or calculations of an invoice, and, thus does not constitute a legal objection to an invoice. *Riley*, 42 U.S. App. D.C. 294-295; *Reed Research,* 243 F.2d 602-605; and

6.  Corrected invoices that have been presented by a plaintiff party to a defendant party, and that have not been objected to by a defendant party within a reasonable time become part of the total account stated upon which the Court shall enter judgment in favor of plaintiff. *Reed Research,* 243 F.2d 603, 605;

7.  The Court shall enter judgment on a corrected summary of the account stated that corrects the references to invoices in the Complaint by: (1) adding to the summary an invoice that was presented to defendants but that unintentionally was not referenced with particularity in the Complaint; (2) correcting typographical errors in the summary with respect to: (i) the amounts of certain invoices; and (ii) the presentment dates of certain invoices, that vary respectively from the amounts and presentment dates on the invoices and presentment emails that plaintiff submits to the Court as evidence in support of plaintiff's Motion for Default Judgment. *Id.*

**2.    Proof of Plaintiff MLG's On Account Stated Claims (Complaint Count I)**

I-1.    For proof of Plaintiff MLG's on account stated claims alleged and stated in

Complaint Count I, Plaintiff MLG refers the Court to: (1) the facts alleged in Complaint ¶¶ 9

through 28; (2) the facts stated the Statement of Undisputed Facts ¶¶ I-1 through I-11; and (3) the

evidence presented in support of the Motion, as referenced at Statement of Undisputed Facts ¶¶ I-1 through I-11.

I-2.    Defendants:

A.    Entered into the Engagement Agreement. Compl. ¶ 9; Statement of Undisputed Facts ¶ J-2, *supra*, and evidenced referenced therein (MLG and Defendants Iraq and MoJ entered into Engagement Agreement);

B.    Accepted the terms of the Engagement Agreement. *Id.*;

C.    Accepted the Legal Services provided by Mills Law Group and Associated Co-Counsel DiMuro Ginsberg P.C. Compl. ¶ 30; Statement of Undisputed Facts ¶ J-10, *supra*, and evidenced referenced therein.

I-3.    Plaintiff MLG and Associated Counsel provided all Legal Services pursuant to the Engagement Agreement at the request of Iraq and performed MLG's contractual obligations in full and in a manner conforming to the Engagement Agreement). Compl. ¶ 41; Statement of Undisputed Facts ¶ J-10 and evidence referenced therein.

I-4.    Plaintiff Mills Law Group presented each Wye Oak Litigation Invoice to Iraq on the Presentment Date for each such invoice stated in Column 2 of Annex A (Ex. 1 to Mem. of Law [ECF No. 12-2], for payment by Iraq to MLG by not later than the Payment Due Date. Compl. ¶ 31; Compl. Annex A, as supplemented by Annex A (Ex. 1 to Mem. of Law) [ECF No. 12-2];[10] Statement of Undisputed Facts ¶ J-9.

_____

[10] Lack of a specific reference in the Complaint to MLG Wye Oak Legal Fees Invoice #19-1222-001 in the amount of $49,675 (presented by MLG to MoJ on 22 December 2019, and never objected to or paid by Iraq-MoJ) does not preclude the Court from finding that Invoice #19-1222-001 is part the claims stated by MLG in the Complaint. MLG has fulfilled the notice pleadings requirements of Fed. R. Civ. P. 8 with respect to Invoice # 19-1222-001. *See generally* Complaint [ECF #5-2]  at ¶¶ 1-3, and 19-20 (short and plain statement putting defendants on notice that pursuant to the Engagement

I-5.     By operation of the District of Columbia law of "on account stated", upon MLG's presentment of each Wye Oak Litigation Invoice to MoJ, each such MLG invoice became "an account rendered" to Defendants. *Exxon Corp. v. Int'l Concrete Corp.*, 335 A.2d 236, 237 (D.C. 1975) ("It is generally recognized that a bill or invoice (even though termed a 'statement') presented to the debtor is tantamount to a demand if it makes clear that the sum of the debits itemized is due and payable"); *First National Realty Corp. v. Impact Advertising Inc., D.C.App.*, 206 A.2d 579, 580 (1965) (as a matter of law, presentment of two bills by plaintiff, each of which were contemporaneously ignored by defendant, constituted an account rendered).

I-6.     Each account rendered represented by each Wye Oak Litigation Invoice became delinquent when not paid by the Payment Due Date (by not later than 60 days following the Presentment Date). Compl. Ex. 1.1 (Engagement Letter) at 4.[11]

I.7.     Each Wye Oak Litigation Invoice is delinquent because Defendants have not paid any Wye Oak Litigation Invoice by the Payment Due Date or afterward. Complaint ¶ 20; Statement of Undisputed Facts at Paragraph ¶ J-12.

---

Agreement, Iraq is contractually obligated to pay each presented invoice by not later than sixty (60) days after the date Mills Law Group presented each invoice to Iraq (through MoJ), and that Iraq has materially breached the Engagement Agreement by not paying each presented invoice), and *id.* at Counts I through IV and Prayer for Relief (prayer for declaration that each failure of Iraq to pay presented MLG Wye Oak litigation invoices constitutes a material breach of the engagement agreement, and that the Court enter judgment in favor of MLG in the amount of each on account stated invoice/delinquent invoice). The incontrovertible evidence is that: (1) MLG presented Invoice # 19-1222-001 to MoJ (*see* 1st Certificate, Ex. 18.F+18.T+ Inv 19-1222-001,[ECF #13-1 at pp. 435-478]; (2) Defendants did not object to Invoice #19-1222-001(*see* Annex A (Ex.  1 to Mem. of Law) at row for Invoice # 19-1222-001 [ECF #12-2 at pp. 41-15], evidence cited in Columns 4 and 5); Statement of Undisputed Facts [ECF #12-7] at ¶¶ J-9(A); I-3 through I-5; I-7; I-10; II-1; II-8(B); III-1; III-8; III-13 and III-15; IV-1; IV-2.2; and IV-3.
[11] [ECF No. 5-2 at pp. 167-171] *also found at* Sealing Motion Ex. 2 (Second Certificate of Authenticity of Domestic Business Records Pursuant to Federal Rule of Evidence 902(11) (hereinafter, "2nd Certificate"), Ex. A-3.1 [ECF No. 13-2 at pp. 1496-1500].

I.8.    A.    Between 1 April 2020 and 25 July 2022, MLG made eighteen (18) demands to Iraq for payment of each and every Delinquent Invoice alleged in Complaint Annex B [ECF No. 5-2 at 50-165] consisting of each the demands referenced in Complaint Annex B ¶¶ 21.F, 21.G, 21.I, 21.J, 21.K, 21.L, 21.M, 21.N, 21.P, 21.Q, 21.Z, 21.AB, 21.AE, 21.AG, 21.AI, 21.AJ, 21.AN, and 21.AP (demand made 25 Jul 2022); Statement of Undisputed Facts ¶ I-6.A and evidence referenced therein.

B.    Between 15 November 2022 and 28 October 2023, MLG made each of the eight (8) additional demands to Iraq for payment of each and every delinquent Wye Oak Litigation Invoice, as stated in Annex B Supplement (Ex. 2 to Mem. of Law [ECF No. 12-3]), consisting of the following demands:

(1)    The written communication referenced in the Annex B Supplement entry for Exhibit ABS-1 [ECF No. 12-3 at pp. 1-7] and evidenced by 2nd Certificate Ex. ABS-1[12] (demand made 15 November 2022);

(2)    The written communication referenced in the Annex B Supplement entry for Exhibit ABS-3 [ECF No. 12-3 at pp.13-21] and evidenced by 2nd Certificate Ex. ABS-3[13] (demand made 31 January 2023);

(3)    The written communication referenced in the Annex B Supplement entry for Exhibit ABS-6 [ECF No. 12-3 at pp. 24-26] and evidenced by 2nd Certificate Ex. ABS-6[14] (demand made 22 May 2023);

---

[12] 2nd Certificate, Ex. ABS-1 (ECF No. 13-2 at pp. 500-946).
[13] 2nd Certificate, Ex. ABS-3 (ECF No. 13-2 at pp. 1362-1370).
[14] 2nd Certificate, Ex. ABS-6 (ECF No. 13-2 at pp. 1383-1385).

(4)     The written communication referenced in the Annex B Supplement entry for Exhibit ABS-7 [ECF No. 12-3 at pp. 26-31] and evidenced by 2nd Certificate Ex. ABS-7[15] (demand made 15 June 2023);

(5)     The written communication referenced in the Annex B Supplement entry for Exhibit ABS-9 [ECF No. 12-3 at pp. 33-45] and evidenced by 2nd Certificate Ex. ABS-9[16] (demand made 26 June 2023);

(6)     The written communication referenced in the Annex B Supplement entry for Exhibit ABS-11 [ECF No. 12-3 at pp. 47-55] and evidenced by 2nd Certificate Ex. ABS - 11[17] (demand made 2 September 2023);

(7)     The written communication referenced in the Annex B Supplement entry for Exhibit ABS-13 [ECF No. 13-2 at pp. 56-68] and evidenced by 2nd Certificate Ex. ABS-13 (demand made 1 October 2023);[18]

(8)     The written communication referenced in Annex B Supplement entry for Exhibit Ex. A-3.6 [ECF No. 13-2 at pp. 68-71] and evidenced by 2nd Certificate Ex. A-3.6 (demand made 28 October 2023).[19]

I-9.     A. Neither Defendant has communicated to MLG: (1) any objection whatsoever to any: (i) Wye Oak Incurred Litigation Cost Invoice; (ii) any Wye Oak Legal Fees Invoice, excepting with respect to Invoice No. 21-0807-001[20], as alleged in Complaint ¶¶ 1.F and 21.B(1)-(3); or (2) otherwise responded to any Demand (including any communication of any

---

[15] 2nd Certificate, Ex. ABS-7 [ECF No. 13-2 at pp. 1386-1402].
[16] 2nd Certificate, Ex. ABS-9 [ECF No. 13-2 at pp. 1408-1430].
[17] 2nd Certificate, Ex. ABS-11 [ECF No. 13-2 at pp. 1433-1457].
[18] 2nd Certificate, Ex. ABS-13 [ECF No. 13-2 at pp. 1467-1494].
[19] 2nd Certificate, Ex. A-3.6 [ECF No. 13-2 at pp. 1530-1532].
[20] 1st Certificate, Ex. 18.AH [ECF #13-1 at pp. 944-967].

reason why Defendants have not paid any of the Delinquent Invoices, except for the following:

(1) with respect to MLG Invoice No. 21-0807-001 (in the amount of $120,001.00),[21] MoJ's

response is as stated and evidenced in Paragraph I-8, *infra*; (2) with respect to MLG's particular

demand made on 31 January 2023[22], the MoJ Legal Department Director General responded on

15 February 2023 only that "I would like to inform you that ,your fees are pending before the

High authorities and I will inform you the result as soon as possible";[23] (3) with respect to

MLG's particular demand made on 31 January 2023,[24] as renewed by MLG's demand of 15 June

2023,[25] on 18 June 2023, MoJ responded:

> **We would like to clarify that, we intend to pay your fees and start a new page to
> your good self** (emphasis added).
>
> We received your email on Thursday and as you know Friday & Saturday a holiday in
> Iraq. We appreciate your efforts in defense of the Iraqi interests and we put the matter of
> paying your fees our priority especially since the Budget Law is under procedure which
> will speed up the payment matter. I hope you considering the payment by governmental
> entities need some special approval from competent authorities.[26]

---

[21] *Id.*

[22] *See* Reference to communication at Annex B Supplement, row for Ex. ABS-3 [ECF # 12-3 at pp. 13-21]; 2nd Certificate, Ex. ABS-3 (true and correct copy of communication) [ECF No. 13-2 at pp. 1362-1370].

[23] *See* Reference to communication at Annex B Supplement, row for Ex. ABS-4 [ECF # 12-3 at pp. 21-22]; 2nd Certificate, Ex. ABS-4 (true and correct copy of communication) [ECF No. 13-2 at pp. 1371-1380].

[24] *See* Reference to communication at Annex B Supplement, row for Ex. ABS-3 [ECF # 12-3 at pp. 13-21]; 2nd Certificate, Ex. ABS-3 (true and correct copy of communication) [ECF No. 13-2 at pp. 1362-1370].

[25] *See* Reference to communication at Annex B Supplement, row for Ex. ABS-7 [ECF # 12-3 at pp. 26-31]; 2nd Certificate, Ex. ABS-7 (true and correct copy of communication) [ECF No. 13-2 at pp. 1386-1402].

[26] *See* Reference to communication at Annex B Supplement, row for Ex. ABS-8 [ECF # 12-3 at pp. 31-33]; 2nd Certificate, Ex. ABS-8 (true and correct copy of communication) [ECF No. 13-2 at pp. 1403-1407].

(4) with respect to MLG's particular demand made on 26 June 2023[27] that MoJ pay the Debt, plus interest, plus collection costs in the total amount of "**$5,323,286.79** _absolutely as soon as possible – but in any event by not later than Monday, 10 July 2023 – that is, within 14 calendar days from today_ (emphasis in original)", MoJ did not respond until 25 September 2023; (5) with respect to MLG's particular demand of 2 September 2023,[28] MoJ responded on 25 September 2023[29] that:

> A high- level committee has been formed for that, this committee recommended to approach your good self regarding reducing the amount in order to pay your dues in the light of the difficult economic position and lack of necessary funds in Iraq.

(5) with respect to MLG's 1 October 2023 response to MoJ's 25 September 2023 communication (referenced immediately above), by which MLG: (a) rebutted Iraq/MoJ's stated reasons for failing to pay any amount of the Debt, the claimed accrued pre-judgment interest or the claimed MLG collection costs as not recognizable or valid as a matter of law; and (b) noted Iraq's/MoJ's continued bad faith; and (c) demanded an immediate good faith partial payment in the amount of US$2,661,643.40 by not later than 3 p.m. (Baghdad time), Monday, 9 October 2023.[30]

---

[27] _See_ Reference to communication at Annex B Supplement, row for Ex. ABS-9 [ECF # 12-3 at pp. 34-45]; 2nd Certificate, Ex. ABS-9 (true and correct copy of communication) [ECF No. 13-2 at pp. 1408-1430].

[28] _See_ Reference to communication at Annex B Supplement, row for Ex. ABS-11 [ECF # 12-3 at pp. 47-54]; 2nd Certificate, Ex. ABS-11 (true and correct copy of communication) [ECF No. 13-2 at pp. 1433-1457].

[29] _See_ Reference to communication at Annex B Supplement, row for Ex. ABS-12 [ECF # 12-3 at pp. 55-56]; 2nd Certificate, Ex. ABS-12 (true and correct copy of communication) [ECF No. 13-2 at pp. 1458-1466].

[30] _See_ Reference to communication at Annex B Supplement, row for Ex. ABS-13 [ECF # 12-3 at pp. 56-68]; 2nd Certificate, Ex. ABS-13 (true and correct copy of communication) [ECF No. 13-2 at pp. 1467-1494].

I-10.    With respect to Invoice No. 21-0807-001, on 8 December 2021 – four (4) months after Plaintiff MLG presented Invoice No. 21-0807-001 to Iraq on 8 August 2021 – Defendants communicated to MLG solely that Defendants "noted that the amount of the invoice is very high and [inaccurately stated that] the only work on the case was to review the summary of Wye Oak appeal, the draft response and correspondence regarding the revised attorney time summaries. [¶] Accordingly, we suggest that you reduce the amount of the invoice so that we can proceed with payment procedures." Compl. ¶ 21; Compl. Annex B at ¶ 21.AK [ECF No. 5-2 at 149-150]; Statement of Undisputed Facts at ¶ I.8 and evidence stated therein.

I-11.    The communication of MoJ to MLG on 8 December 2021 with respect to Invoice No. 21-0807-001 is not legally cognizable under the law of On Account Stated in the District of Columbia as an objection to Invoice No. 21-0807-001 because: (1) Defendant did not make the communication within a reasonable time (within 60 days) from the Presentment Date; and (2) Defendants' communication did not make any particularized objection nor otherwise dispute Invoice No. 21-0807-001 Compl. ¶ 21.B; Statement of Undisputed Facts at ¶ I-9. and evidence referenced therein.

I-12.    Because Defendants did not object to any Wye Oak Litigation Invoice within a reasonable time (within 60 days after Presentment or thereafter) (*see* Statement of Undisputed Facts at ¶¶ I-6 through I-8), as a matter of law each "account rendered" (represented by each Delinquent Invoice) has become an uncontested "account stated" in the amount of each Wye Oak Litigation Invoice. Statement of Undisputed Facts at ¶ I-10. and evidence referenced therein. *Standard Oil Co.*, 107 U.S. 333-334; *Riley v. Mattingly*, 42 U.S. App. D.C. 294-295; *Reed Research,* 243 F.2d 602-605.

I-13.    In light of the foregoing, and as alleged and stated in Count I of the Complaint, Defendants are jointly and severally indebted and liable to MLG in the total amount of $4,075,170.65 on the accounts stated by each delinquent Wye Oak Litigation Invoice. Statement of Undisputed Facts at ¶¶ J-9, J-12, I-7 through I-10.

### D.    BREACH OF ENGAGEMENT AGREEMENT (COUNT TWO)

#### 1.    Law

##### a.    Choice of Law

As established in the choice of law discussion above, the Engagement Agreement – including the rights and responsibilities of the parties arising under or relating to the Engagement Agreement – is governed, controlled and construed by the law of the District of Columbia. *See* discussion, Section IV.B.2.a.i, *supra* ("Choice of Law").

##### b.    Substantive Law

Under District of Columbia law, to prevail on a breach of contract claim, a plaintiff party must prove four elements:

1.    The existence of a valid contract between the parties;

2.    An obligation or duty arising out of the contract on the part of a defendant party;

3.    A material breach of such duty; and

4.    Damages caused by such breach.

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C.2009).

#### 2.    Proof of Plaintiff MLG's Breach of Contract Claim (Complaint Count Two)

II-1.    For proof of Plaintiff MLG's breach of contract claim alleged and stated in Complaint Count II, Plaintiff MLG refers the Court to: (1) the facts alleged in Complaint ¶¶ 9 through 28; (2) the facts stated the Statement of Undisputed Facts ¶¶ II-1 through II-8; and (3)

the evidence presented in support of the Motion, as referenced at Statement of Undisputed Facts ¶¶ II-1 through II-8.

II-2.    Existence of a Valid Contract. The Engagement Agreement constitutes the valid contract between Plaintiff MLG and Defendants Iraq and MoJ under which MLG's breach of contract claims arise. Compl. at ¶¶ 9-28; Statement of Undisputed Facts at J-2, J-3, J-6, J-8, J-10, J-11, J-12, I-2, I-3, I-4, I-5, and I-6, and presented evidence evidenced therein.

II-3.    Plaintiff MLG's and Defendants' Material Obligations and Duties Arising Out of the Engagement Agreement:

II.3.A.  Plaintiff MLG's Contractual Duties to Perform the Legal Services and Present Wye Oak Litigation Invoices to Defendant MoJ: Under the Engagement Agreement, Plaintiff MLG owed to Defendants the contractual duty to:

(1)    Provide the Legal Services as requested by Defendants. Compl. ¶ 11.A; Statement of Undisputed Facts at ¶ J-10 and presented evidence referenced therein;

(2)    To present the Wye Oak Litigation Invoices to Defendant MoJ. Compl. ¶ 12; Statement of Undisputed Facts at ¶ J-11 and presented evidence referenced therein;

(3)    Give notice to Iraq (through MoJ) when Defendants are delinquent in remitting payment of each Wye Oak Litigation Invoice and to demand cure of Defendants' breach of their payment obligations to Plaintiff MLG under the Engagement Agreement. Compl. ¶ 9.F; Statement of Undisputed Material Facts at ¶¶ VI-2 through VI-5 and presented evidence referenced therein.

II.3.B.  Defendants Iraq and MoJ Contractual Duties. Under the Engagement Agreement, Defendants owe to Plaintiff MLG the following duties:

(1)     To maintain the retainer with MLG in the amount of $100,000 at all times during the Term of Representation. Compl. ¶ 11.B; Statement of Undisputed Facts at ¶¶ J-6.B and presented evidence referenced therein.

(2)     To advance funds to MLG as required for MLG to pay Wye Oak Litigation expenses out of Iraq-advanced funds. *Id.*

(3)     To process and remit to Plaintiff MLG payment in full of each Wye Oak Litigation Invoice by deposit of such monies to Plaintiff MLG's bank account in the United States by not later than sixty (60) following the Presentment Date for each such invoice. *Id.*

II-4.     <u>Plaintiff MLG's Performance of MLG Contractual Duties In Full and In a Manner Conforming to the Engagement Agreement</u>: Plaintiff MLG and Associated Counsel provided all Legal Services pursuant to the Engagement Agreement at the request of Iraq and performed MLG's contractual obligations in full and in a manner conforming to the Engagement Agreement. Compl. ¶ 18 and 41; Statement of Undisputed Facts at ¶ J-10 and presented evidence referenced therein.

II-5.     <u>Defendants' Material Breach of Defendants' Contractual Duties to Plaintiff MLG</u>: Defendants have materially breached each of the following contractual duties to Plaintiff MLG arising out of the Engagement Agreement:

II.5.A.  The duty to maintain the retainer with MLG in the amount of $100,000 at all times during the Term of Representation. Compl. ¶ 11; Statement of Undisputed Facts at ¶¶ J-6, J-8, J-9 and J-12, and presented evidence referenced therein.

II.5.B.  The duty to advance funds to MLG as required for MLG to pay Wye Oak Litigation expenses out of Iraq-advanced funds. *Id.*

II.5.C.  To process and remit to Plaintiff MLG's bank account in the United States the total sum of $4,075,170.65, in payment in full of each: (i) Wye Oak Incurred Litigation Cost Invoices (totaling $287,393.65), and (ii) Wye Oak Legal Fees Invoices (totaling $3,787,777.00) within sixty (60) days of the Presentment Date of each such invoice. Compl. ¶ 18; Statement of Undisputed Facts at ¶¶ J-6.B, J-12, and presented evidence referenced therein.

II-6.    Plaintiff MLG's Damages Caused by Defendants' Material Breach of Above-Referenced Defendants' Contract Duties to MLG: As a direct and proximate cause of Defendants' above-referenced material breaches of Defendants' contractual duties to Plaintiff MLG, Plaintiff MLG has been damaged as follows:

II-6.A. Defendants' breach of Defendant's obligation to remit to MLG any part of the sum of $287,393.65 for incurred Wye Oak Litigation Expenses that MLG advanced out of MLG's own funds on behalf Defendants, and which, under the Engagement Agreement, Defendants are contractually obligated to reimburse to Plaintiff MLG in full by not later than sixty (60) days after the Presentment Date of each Wye Oak Incurred Litigation Cost Invoice. Compl. ¶ 20; Statement of Undisputed Facts at ¶¶ J-11 and J-12, and presented evidence referenced therein;

II-6.B.  Defendants' breach of Defendant's obligation to remit to MLG any part of the sum of $3,787,777.00 due for the Legal Services provided to Defendants by MLG and Associated Counsel pursuant to the Engagement Agreement, and which, under the Engagement Agreement, Defendants are contractually obligated to pay to Plaintiff MLG in full by not later than sixty (60) days after the Presentment Date of each Wye Oak Legal Fees Invoice. Compl. ¶ 20; Statement of Undisputed Facts at ¶¶ J-11 and J-12, and presented evidence referenced therein; and

II-6.C.  The value of Plaintiff MLG's loss of use of all parts of the $4,075,170.65 that Defendants are contractually obligated to have paid to Plaintiff MLG by not later than the Payment Due Date for each Wye Oak Litigation Invoice, represented by accrued pre-judgment interest at the rate provided by D.C. Code § 28–3302(a).

II-7.   In light of the foregoing, and as alleged and stated in Count II of the Complaint, Defendants are jointly and severally indebted and liable to MLG in the total amount of $4,075,170.65 plus accrued prejudgment interest (as discussed in Section II-6.C., *infra*).

### E.   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COMPLAINT COUNT THREE)

#### 1.   Law

##### a.   Choice of Law

As established above, District of Columbia contract law governs and controls Plaintiff MLG's Count III breach of the implied covenant of good faith and fair dealing claims against Defendants. *See* Section IV.B.2.a.i and IV.B.3.a.i, *supra* ("Choice of Law").

##### b.   Substantive Law

It is settled law in the District of Columbia that there is an implied duty of good faith and fair dealing in every contract that requires each party to a contract to do nothing "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *See Paul v. Howard Univ.*, 754 A. 2d 297, 310 (D.C. 2000); *Hais v. Smith*, 547 A. 2d 986, 987 (D.C. 1988).

#### 2.   Proof of Plaintiff MLG's Breach of Implied Covenant of Good Faith and Fair Dealing Claims

III-1.   For proof of Plaintiff MLG's breach of implied covenant of good faith and fair dealing claims stated in Complaint Count III, Plaintiff MLG refers the Court to: (1) the facts

29

alleged in Complaint ¶¶ 9 through 28; (2) the facts stated the Statement of Undisputed Facts ¶¶ III-1 through III-16; and (3) the evidence presented in support of the Motion, as referenced at Statement of Undisputed Facts ¶¶ III-1 through III-16.

III-2.   <u>Existence of Valid Contract Between the Parties</u>: With respect to proof of the existence of the Engagement Agreement as the valid contract between the parties, Plaintiff MLG incorporates by reference the facts stated and evidence referenced in Paragraph II-2 of this Memorandum, *supra*.

III-3.   <u>Obligation and Duties of Defendants Arising Out of the Engagement Agreement Implied Covenant of Good Faith and Fair Dealing</u>:

III-3.A. The Engagement Agreement provides that the "fruits of the contract" to be received by Mills Law Group include, but are not limited to those duties of Defendants Iraq and MoJ stated at Paragraph II.3.B, *supra*, as well as the duty stated in Paragraph III-3.B, *infra*;

III-3.B. By entering into the Engagement Agreement, Iraq (acting through MoJ) contractually obligated itself, whether expressly or by implication, to take all acts necessary for Iraq (through MoJ) to: (i) provide Mills Law Group *in advance* with funds in sufficient amounts to cover Expenses; (ii) replenish the $100,000 retainer; and (iii) pay each Wye Oak Litigation Invoice by not later than the Payment Date.

III-4.   <u>Defendants Material Breach of the Implied Duties of Good Faith and Fair Dealing</u>:

III-4.A. During the Term of Engagement, Mills Law Group requested that MoJ advance to Mills Law Group sufficient funds to cover Expenses. Compl.at ¶ 48; Statement of Undisputed Fact at ¶ III-9 and presented evidence referenced therein.

III-4.B.  Iraq (through MoJ) materially breached the implied covenant of good faith and fair dealing by not taking all necessary acts to pay funds to Mills Law Group, promptly or otherwise, the amounts of the advances for Expenses requested by Mills Law Group. Compl.at ¶ 49.A; Statement of Undisputed Facts ¶ III-10.A and presented evidence referenced therein.

III-4.C.  Between 10 October 2019 and 9 December 2021, Mills Law Group demanded that Iraq (through MoJ) timely reimburse Mills Law Group for the $287,393.65 in unreimbursed incurred Expenses by presenting Iraq (through MoJ) with the Wye Oak Incurred Litigation Cost Invoices. Compl. at ¶ 51; Statement of Undisputed Facts ¶ I-6 and presented evidence referenced therein.

III-4.D.  Iraq (through MoJ) materially breached the implied covenant of good faith and fair dealing by not taking all necessary acts to pay any of the Wye Oak Incurred Litigation Cost Invoices by the Payment Date, or any time thereafter. Compl. at ¶ 52; Statement of Undisputed Facts at ¶ J-12, and presented evidence referenced therein.

III-4.E.  Between 20 December 2019 and 9 December 2021, Mills Law Group demanded that Iraq (through MoJ) timely pay the Wye Oak Legal Fees Invoices in the total amount of $3,738,102.00 (three million seven hundred thirty-eight thousand one hundred and two dollars) by presenting Iraq (through MoJ) with the Wye Oak Legal Fees Invoices. Compl. at ¶ 53; Statement of Undisputed Facts at ¶¶ J-11, J-12, and I-6 and presented evidence referenced therein.

III-4.F. Iraq (through MoJ) materially breached the implied covenant of good faith and fair dealing by not taking all necessary acts to pay any of the Delinquent Legal Services

Invoices by the Payment Date, or any time thereafter. Compl. at ¶ 54; Statement of Undisputed

Facts at ¶¶ J-12, III-4, III-5.B, III-7, and III-8 and presented evidence referenced therein.

III.5.   <u>Damages Caused by Defendants Material Breach of the Implied Covenant of</u>

<u>Good Faith and Fair Dealing</u>: With respect to proof of the damages caused to Plaintiff MLG

by Defendants' breach of the implied covenant of good faith and fair dealing:

III.5.A. As a direct and proximate cause of Defendants' material breach of the

implied covenant of good faith and fair dealing, Plaintiff MLG did not have advance funds

from Iraq in amounts sufficient to pay all Expenses from Iraq-provided funds, either as the

Expenses were incurred or thereafter. Complaint at ¶ 49.B; Statement of Undisputed Material

Facts ¶ III-10.B and presented evidence referenced therein.

III.5.B. Strictly as a matter of forbearance, and to avoid irreparable harm to Iraq

in the Wye Oak Litigation, thereafter during the Term of the Engagement, Mills Law Group

incurred legal liability for as-yet unreimbursed Expenses, in the total amount of $287,393.65

(two hundred eighty-seven thousand three hundred ninety-three dollars and 65 cents). Compl.

at ¶ 50; Statement of Undisputed Facts at ¶ III-11.

III.5.C. Plaintiff MLG suffered such further damages stated at Paragraph II-6 of

this Memorandum, *supra*, as proven by the evidence referenced in Paragraph II-6, *supra*.

III-6.   In light of the foregoing, and as alleged and stated in Count III of the Complaint,

Defendants are jointly and severally indebted and liable to MLG in the total amount of

$4,075,170.65 plus accrued prejudgment interest as set forth discussed in Paragraph II-7 of this

Memorandum, *supra.*

F.   ***QUANTUM MERUIT* (COMPLAINT COUNT FOUR)**

1.   **Law**

a.    Choice of Law

District of Columbia contract law governs and controls Plaintiff MLG's Count IV

quantum meruit claim against Defendants. *See* Section IV.B.2.a.i and IV.B.3.a.i, *supra* ("Choice

of Law").

b.    Substantive Law

In the unlikely event that the Court does not find Defendants liable to Plaintiff MLG

under either Counts I, II or III, District of Columbia law provides that the Court may find that

Defendants are liable to Plaintiff MLG for damages in the amount of $4,075,170.65 on a theory

of *quantum meruit*.

In the District of Columbia, to recover on a quantum meruit claim:

1.    Valuable services must be rendered [by the plaintiff];

2.    For the person sought to be charged;

3.    Which services were accepted by the person sought to be charged, and enjoyed by
      him or her; and

4.    Under such circumstances as reasonably notified the person sought to be charged
      that the plaintiff, in performing such services, expected to be paid.

*TVL Assocs. v. A & M Constr. Corp.*, 474.A.2d 156, 159 (D.C.1984) (quoting *In re Rich*, 357

A.2d 764, 766 (D.C. 1975)).

"Quantum meruit may refer to either an implied contractual or a quasi-contractual duty

requiring compensation for services rendered." *TVL*, 474 A.2d at 159. Thus, a request for

"quantum meruit," which is a measure of damages and not a legal theory of recovery,

encompasses both implied-in-law obligations ("quasi-contracts") as well as implied-in-fact

contracts. Unlike an implied-in-law "quasi-contract," an implied-in-fact contract is a true

contract that contains all the required elements of a binding agreement. *Vereen v. Clayborne*, 623

A.2d 1190, 1193 (D.C.1993). An implied-in-fact contract "differs from other contracts only in

that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Id.* (*quoting Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973)).

In order to demonstrate the existence of an implied-in-fact contract for services, a plaintiff party must prove the following elements:

1.   The party seeking payment must show that the services were carried out under such circumstances as to give the recipient reason to understand that the services were rendered for the recipient and not for some other person;

2.   The party must demonstrate the existence of such circumstances as to put the recipient on notice that the services were not rendered gratuitously; and

3.   The party must prove that the services were beneficial to the recipient.

*H.G. Smithy Co. v. Washington Medical Ctr., Inc.*, 374 A.2d 891, 893 (D.C.1977).

## 2.     Proof of Quantum Meruit Claim

IV-1.   For proof of Plaintiff MLG's *quantum meruit* claims stated in Complaint Count IV, Plaintiff MLG refers the Court to: (1) the facts alleged in Complaint ¶¶ 9 through 28; (2) the facts stated the Statement of Undisputed Facts ¶¶ IV-1 through IV-4; and (3) the evidence presented in support of the Motion, as referenced at Statement of Undisputed Facts ¶¶ IV-1 through IV-4.

IV-2.   <u>Legal Services Carried Out Under Such Circumstances as to Give Recipient Defendants Reason to Understand that the Legal Services Were Rendered for Recipient Defendants and Not for Some Other Person</u>:

IV-2.A. MLG and Defendants entered into the Engagement Agreement, which by its express terms provided that MLG would provide the Legal Services only to Defendants – in other words, to no other person. Compl. ¶¶ 2.A, 5.C, and 9; Statement of Undisputed Facts ¶¶ J-2 and J-6.B, and the presented evidence referenced therein.

IV-3.   <u>Existence of Such Circumstances as to Put the Recipient on Notice that the</u> <u>Legal Services Were Not Rendered Gratuitously</u>: By entering into the Engagement Agreement, Defendants made an express legally-binding commitment to reimburse MLG for the Expenses incurred by MLG on Defendants' behalf (that is, the Expenses invoiced on the Wye Oak Incurred Litigation Cost Invoices) and the fees for the Legal Services provided by MLG and Associated Counsel (that is, the fees invoiced on the Wye Oak Legal Fees Invoices). *Id.*

IV-4.   <u>Legal Services Were Beneficial to the Recipient Defendants</u>: The Legal Services were provided by MLG at the direction of Defendants, in the Wye Oak Litigation in defense of Defendants Iraq and the Ministry of Defense of the Republic of Iraq against the claims of plaintiff Wye Oak, and, therefore, were beneficial to recipient Defendants Iraq and MoJ. Complaint ¶¶ 18.A, 18.B, 18.C, and 41; Engagement Agreement at 1; Statement of Undisputed Facts at ¶¶ J-2, J-9 and J-11, and presented evidence referenced therein.

IV-5.   <u>Value of Legal Services</u>:

IV-5.A. In entering into the Engagement Agreement, Defendants expressly agreed to: (i) reimburse MLG for the Expenses invoiced by MLG to Defendants by MLG's presentment of the Wye Oak Incurred Litigation Cost Invoices, which were incurred by MLG on behalf of Defendants and paid by MLG out of MLG's own funds; and (ii) pay MLG legal fees at the hourly rates stated for timekeepers in the Engagement Agreement, as invoiced by MLG through the presented Wye Oak Legal Fees Invoices. Compl. Complaint ¶¶ 18.A, 18.B, 18.C, and 41; Engagement Agreement at 2-3; Statement of Undisputed Facts ¶¶ J-2, J-6.B.iii, I-2 and presented evidence referenced therein.

IV-5.B.

IV-5.C.  Defendants did not object to any Wye Oak Incurred Litigation Cost Invoice and did not make any legally-cognizable objection to any Wye Oak Legal Fee Invoice. Compl. ¶ 21; Compl. Annex B; Annex B Supplement (Ex. 2 to Mem. of Law) [ECF No. 12-3]; Statement of Undisputed Facts at ¶¶ I-6, I-7 and presented evidence referenced therein.

IV.5.D.  In light of the facts and evidence referenced in Paragraphs IV-5.A through IV.5.C, *supra*, the sums of: (a) the Wye Oak Incurred Litigation Cost Invoices ($287,393.65) and the Wye Oak Legal Fees Invoices ($3,787,777.00) represent the reasonable value of the unreimbursed Expenses incurred by MLG on behalf of Defendants and the Legal Services that Defendants have received from MLG.

IV-6.   Quantum Meruit Damages Owed by Defendants to Plaintiff MLG:

IV-6.A.   Defendants have not paid MLG any part of the sums stated on the Wye Oak Incurred Litigation Cost Invoices and the Wye Oak Legal Fees Invoices. Compl. ¶ 2.H, 20, 22; Statement of Undisputed Facts ¶¶ J-9, J-12.

IV-6.B.   In light of the foregoing, Plaintiff MLG has been damaged in the amount of $287,393.65 for Expenses that have not been reimbursed by Defendants and $3,787,777.00 in unpaid fees for the Legal Services that MLG and Associated Counsel provided to Defendants, to Defendants' benefit, for a total *quantum meruit* liability of $4,075,170.65.

IV-7.   Accordingly, if for any reason the Court does not enter judgment and grant relief in favor of Plaintiff MLG on the claims stated in Counts I, II and III the total amount of $4,075,170.65, the Court nevertheless should grant judgment and relief to Plaintiff and against Defendants, in quantum meruit, in the amount of $4,075,170.65.

## G.   PREJUDGMENT INTEREST ON IRAQ'S DEBT TO MLG (COMPLAINT ¶¶ 3, 26, PRAYER FOR RELIEF ¶ D)

### 1.   Law

a.    Choice of Law

For the reasons given in the choice of law discussion at section IV.B.2.a.i of this Memorandum, *supra*, District of Columbia law governs and control Plaintiff MLG's prejudgment interest claim.

b.    Substantive Law

(i)    Absence of Immunity from Award of Prejudgment Interest

A foreign sovereign is not immune from an award of prejudgment interest where – as here – an FSIA exception applies to the underlying claim. *See* 28 U.S.C. § 1605(a)(2), *supra*; *see also*, *Ben–Rafael*, 540 F.Supp.2d at 59; *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F.Supp.2d 216, 264–65 (D.D.C.2008).

(ii)    Code of District of Columbia § 28–3302(a)

Code of District of Columbia § 28–3302(a) law provides this Court with the power and authority to award prejudgment interest to Plaintiff MLG at the non-compounded rate of 6% per annum, as compensation to MLG for the damages inflicted upon MLG by Iraq's egregious, intentional breach of its contractual payment obligations to MLG.

(iii)    The Court's Discretion; Relevant Considerations

The Court possesses wide discretion in awarding prejudgment interest. *See Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 550 n. 6 (D.C.1981); *Noel v. O'Brien*, 270 A.2d 350, 351 (D.C.1970). Relevant considerations to the Court's exercise of discretion in awarding prejudgment interest include: (i) whether the plaintiff has been deprived of the use of the money withheld; (ii) whether plaintiff timely commenced suit; and (iii) the certainty of the amount due. *See Winder v. District of Columbia*, 555 F.Supp.2d 103, 111 (D.D.C.2008), *aff'd sub nom. Winder v. Erste*, 566 F.3d 209 (D.C.Cir.2009).

### 2.      Proof of Prejudgment Interest

V-1.      For proof of Plaintiff MLG's prejudgment interest claim stated in Complaint ¶¶ 3, 26, Prayer for Relief ¶ D, Plaintiff MLG refers the Court to: (1) those provision of the Complaint; (2) the facts stated the Statement of Undisputed Facts ¶¶ V-1 through V-9; and (3) the evidence presented in support of the Motion, as referenced at Statement of Undisputed Facts ¶¶ V-1 through V-9.

V-2.      Although each Defendant is a foreign sovereign, neither is immune from an award of prejudgment interest because the FSIA commercial activity exception to sovereign immunity applies to MLG's prejudgment interest claim. Statement of Undisputed Facts at ¶¶ Paragraphs J-1 through J-15 and V-2, and presented evidence referenced therein.

V-3.      <u>MLG's Deprivation of Use of the Wye Oak Litigation Invoice Payments Withheld by Defendants</u>: Beginning on the Delinquency Date for each Wye Oak Litigation Invoice and continuing thereafter (so far without end), Defendant's failure to pay MLG the debt to MLG in the amount of each Delinquent Invoice has deprived Plaintiff MLG of use of money in the amount of such Debt, from the Delinquency Date until thereafter paid. Statement of Undisputed Facts at ¶ V-3, and presented evidence referenced therein.

V-4.      <u>Timely Commencement of This Action</u>: Plaintiff MLG timely commenced this action to collect the Debt that Defendants owe to MLG by bringing this action well within the three-year limitations period provided by D.C. Code § 12-301(7) for actions on a simple contract, express or implied. Statement of Undisputed Facts at ¶ V-4, and presented evidence referenced therein.

V-5.      <u>Certainty of the Amount Due</u>: The amount of Defendants' Debt to MLG on each Delinquent Invoice is certain: namely, the total amount due stated on each Delinquent Invoice

(summarized in Annex A to Plaintiff's Motion for Entry of Default Judgment, and evidenced by each Wye Oak Litigation Invoice). The total amount of the Debt is $4,075,170.65. Statement of Undisputed Facts at ¶ V-5, and presented evidence referenced therein.

V-6.    Pursuant to D.C. Code § 28–3302(a), the statutory rate of pre-judgment interest is 6% per annum (non-compounded). Statement of Undisputed Facts at ¶ V-6, and law cited therein.

V-7.    From the Delinquency Date for each Delinquent Invoice through 30 September 2023, prejudgment interest in the total amount of $833,462.31 has accrued on the Debt. Statement of Undisputed Facts at ¶ V-7, and presented evidence referenced therein.

V-8.    For each calendar day beginning on 1 October 2023 and continuing thereafter that Defendants do not pay any part of the Debt to MLG, prejudgment interest accrues in the amount of $668.33 per day. Statement of Undisputed Facts at ¶ V-8, and presented evidence referenced therein.

V-9.    <u>Conclusions of Law</u>: Wherefore, each of Defendants is liable and indebted to Mills Law Group for: (1) $833,462.31 in prejudgment interest that has accrued on the Debt through 30 September 2023; and (2) $668.33 in prejudgment interest for each day on and after 1 October 2023 that Defendants do not pay to MLG any part of the Debt.

## H.    MLG COLLECTION COSTS

### 1.    Law

#### a.    <u>Choice of Law</u>

For the reasons given in the choice of law discussion at section IV.B.2.a.i of this Memorandum, supra, District of Columbia law governs and control Plaintiff MLG's Collection Cost claims.

b.   <u>Substantive Law</u>

Under the law of the District of Columbia, a plaintiff creditor has the right to claim and recover from defendant debtor all reasonable costs the creditor incurs in connection with attempting to collect defendant debtor's delinquent debt to creditor – including, but not limited to attorneys fees, filing fees and court costs incurred after an invoice has become delinquent (*i.e.*, "Collection Costs" as defined in the Statement of Undisputed Facts Glossary at ii) – when a contract between creditor and debtor expressly provides so. *Progressive Nursing Staffers of Va., Inc. v. Capitol Med. Ctr., LLC*, Civil Action No. 11-2160 (JDB), 2013 U.S. Dist. LEXIS 4383, at *6 (D.D.C. Jan. 11, 2013) (judgment in favor of plaintiff included costs of collection because the parties' agreements provided that plaintiff is entitled to all collection costs *including reasonable attorney fees and court filing fees* in case of defendant's nonpayment) (emphasis added).

Furthermore, when a contract between a creditor and debtor provides that debtor shall be liable to creditor for collection costs incurred by creditor in attempting to collect debtor's delinquent debt to creditor, reasonable collection costs incurred by creditor must be awarded in addition to the compensatory damages for which debtor is liable to creditor for debtor's material breach of debtor's contractual payment obligations to creditor. *Sundown, Inc. v. Canal Square Assocs.*, 390 A.2d 421, 432 (D.C. 1978) (judgment against defendant must include award of attorneys fees, expert fees, court costs, and miscellaneous expenses to plaintiff when the provision of the parties' lease authorize and entitle plaintiff to be reimbursed for such expenses); *see also, Wilcox v. Sisson*, Civil Action No. 02-1455 (RMC), 2006 U.S. Dist. LEXIS 33404, at *12 (D.D.C. May 25, 2006) (plaintiff prevailed in the underlying litigation and is entitled to an award of attorneys' fees pursuant to the express terms of plaintiff's contract of sale with the Defendant).

The fundamental purpose of the fee award is to compensate the attorney for his efforts. The first task for [the Court,] therefore, is determining the amount of time reasonably expended. *Copeland v. Marshall*, 641 F.2d 880,891 (D.C. Cir. 1980). The fee applicant bears the burden of establishing entitlement to an award and thus documenting the appropriate hours. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

An attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kattan ex rel. Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993).

### 2.  Proof of Collection Costs Claim

VI-1.  Entitlement:

VI-1.A.     The Engagement Agreement between MLG and Iraq for Wye Oak Litigation representation expressly incorporates the Standard Terms of the predecessor Maggs & McDermott-MoJ Engagement Agreement, including the following Standard Term:

> We will notify you promptly if your account becomes delinquent, and you agree to bring the account or the advance deposit current when so notified. If the delinquency continues and you do not arrange satisfactory payment terms, we reserve the right to postpone or defer providing additional services or to withdraw from the representation and pursue collection of your account. **If collection activities are necessary, you agree to pay us any costs we may incur in collecting the debt, including court costs, filing fees and a reasonable attorney's fee.** (Emphasis added.)

Compl. at ¶ 9; Statement of Undisputed Facts ¶¶ J-2, J-3, J-4, J-5, VI-2, VI-5 and presented evidence referenced therein.

VI-1.B.     Each Wye Oak Litigation Invoice became delinquent because Iraq did not pay each such invoice by the Payment Date or any other time. Compl. at ¶¶ 2.H, 20, 22; Statement of Undisputed Facts ¶¶ J-9 and J-12, and presented evidence referenced therein.

41

VI-1.C.        MLG promptly notified Defendants that Defendants account had

become delinquent as to each Wye Oak Litigation Invoice because Defendants did not pay any

of the MLG Wye Oak Invoices by the Payment Date. Compl. at ¶ 21.A; Statement of Undisputed

Material Facts ¶ I-6 and presented evidenced referenced therein.

VI-1.D.        After each MLG Wye Oak Invoice becoming delinquent, MLG

commenced and continued activities to collect the Debt (the "Collection Activities"). From 7

March 2020 through the date of filing of Plaintiff's Motion for Entry of Default Judgment, the

Collection Activities have consisted of: (1) preparation of and communication to Defendants of

repeated delinquency notices, warnings, and payment demands; and, when Defendants failed to

make any payment whatsoever in response to such notices, warnings and payment demands, then

(2) preparation, filing and maintenance of this collection lawsuit. Compl. at ¶ 21.A; Statement of

Undisputed Material Facts ¶ I-6 and presented evidence referenced therein.

VI.2.   Damages:

VI.2.A.        From 7 March 2020 through 5 p.m., Saturday, 28 October 2023, MLG has

incurred $601,600.83 in collection costs (defined as "any costs we may incur in collecting the

debt, including court costs, filing fees and a reasonable attorney's fee") as a consequence of

MLG's efforts to collect Iraq's Debt to MLG (the "Collection Costs"). Compl. at Prayer for

Relief, ¶ C(4); Statement of Undisputed Material Facts ¶ VI-9 and presented evidence referenced

therein.

VI.2.B.        Plaintiff MLG has met its burden of proving the reasonableness of claimed

Collection Costs.

VI-2.B.1.        Plaintiff MLG invoiced the amounts of out-of-pocket Collection

Expenses incurred by Plaintiff MLG in the amounts billed to MLG by independent commercial

entities (Federal Express, *etc*.) and the Court. Statement of Facts ¶ VI-9.B and presented evidence referenced therein;

VI-2.B.2.    Plaintiff MLG invoiced the amounts of Collection Expenses in the amounts billed to MLG by independent commercial entities (Federal Express, *etc*.) and the Court. Statement of Undisputed Facts at ¶ VI-9.B, and presented evidence referenced therein;

VI-2.B.3.    Plaintiff MLG invoiced Defendants for the Collection Legal Fees at the same hourly rates that were: (i) established by the Engagement Agreement; (ii) used by MLG for invoicing the Wye Oak Litigation legal fees on each of the Wye Oak Legal Fees Invoices; and (iii) were not objected to by Defendants. Statement of Undisputed Facts at ¶ VI-9.C., and presented evidence referenced therein;

VI-2.B.4.    The hourly billing rates of MLG and Associated Counsel are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Statement of Undisputed Facts at ¶ VI-9.D, and presented evidence referenced therein.

VI-3.    All of the Collection Expenses and the Collection Legal Fees were reasonably incurred by MLG, in reasonable amounts, in connection with Collection Activities made necessary to Defendants' material breach of their payment obligations to MLG under the Engagement Agreement. Statement of Undisputed Facts at ¶ VI-10, and presented evidence referenced therein.

VI.4.    Conclusion of Law: Wherefore, Iraq is liable and indebted to MLG for collection costs in the amount of $601,600.83 incurred by MLG through 5 p.m., Saturday, 28 October 2023 plus any and all Collection Costs incurred by MLG thereafter.

**7.    TAXABLE COSTS (COMPLAINT PRAYER FOR RELIEF ¶ E)**

### 1.      Law

Fed. R. Civ. P. 54(d) provides that "costs – other than attorney's fees – should be allowed to the prevailing party." A party who prevails under a default judgment is equally entitled to costs incurred in the prosecution of this action. *See Limbach Co., LLC v. Ten Hoeve Bros., LLC*, 126 F. Supp. 3d 105, 109–110 (D.D.C. 2015).

### 2.      Proof of Taxable Costs

VII-1.   For proof of Plaintiff MLG's taxable costs claim stated at Complaint, Prayer for Relief at ¶ E, Plaintiff MLG refers the Court to: (1) those provision of the Complaint; (2) the facts stated the Statement of Undisputed Facts ¶¶ VII-1 through VII-5; and (3) the evidence presented in support of the Motion, as referenced at Statement of Undisputed Facts ¶¶ VII-1 through VII-5.

VII-2.   By virtue of each Defendants' default and the Court's entry of each Defendant's default, Plaintiff MLG is the prevailing party in this action. Statement of Undisputed Facts ¶ VII-2 and presented evidence referenced therein.

VII-3.   Plaintiff has incurred the following costs that are taxable against Defendants pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d): (1) filing fees in the amount of $402.00 (28 U.S.C. § 1920(1); and (2) expenditures in the amount of $14,945.13 for service of process pursuant to FSIA service provisions (28 U.S.C. § 1608(e) (the "Taxable Costs"). Statement of Undisputed Facts ¶ VI-9 (MLG Invoice 23-102x-001 for Collection Expenses at billing detail (court filing fees in the amount of $402.00; expenditures for FSIA service of process in the amount of $14,945.13) and ¶ VII-3 and presented evidence referenced therein.

VII-4.   Plaintiff has included such taxable costs as part of Plaintiff's Collection Costs claim. Statement of Undisputed Facts ¶ VII-4 and presented evidence referenced therein.

VII-5.  <u>Conclusion of Law</u>: If the Court does not award the Taxable Costs to Plaintiff MLG as part of Plaintiff MLG's Collection Costs claim, then each Defendant nevertheless is liable and indebted to Plaintiff for the Taxable Costs in the amount of $15,347.13 pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d).

## V.   **CONCLUSION**

For the reasons stated above, Plaintiff Mills Law Group respectfully requests that this Court enter a default judgment against Iraq, and award to MLG:

- $4,075,170.65 for on account stated damages, or alternatively, breach of contract damages or *quantum meruit* damages;

- Pre-judgment interest in the amount of $833,462.31 (through 30 September 2023) and $688,.33 for each day thereafter (as provided by District of Columbia law);

- Collection Costs of $601,600.83; and

- If not already awarded as part of Collection Costs, then $15,347.13 in taxed costs.

Date: October 30, 2023               Respectfully submitted,

**MILLS LAW GROUP LLP**

By:___*/s/ Timothy B. Mills*_____
Timothy B. Mills
D.C. Bar No. 425209
800 Connecticut Avenue N.W., Suite 300
Washington, DC  20006
Telephone: (202) 457-8090
Fax: (202) 478-5081
timothy.mills@mills-lawgrp.com
*Lead Counsel for Plaintiff Mills Law Group LLP*